UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:  Hon. Thomas J. Tucker
Gallatin, Jeffrey

11-42651-T

Debtor(s)  Chapter 7

_____/

TRUSTEE'S APPLICATION FOR AUTHORITY TOSELL CERTAIN PROPERTY FREE AND CLEAR OF LIENS, CLAIMS,ENCUMBRANCES AND OTHER INTERESTS AT AUCTION SALE; WITH LIENS TO TRANSFER TO PROCEEDS OF SALE, AND FOR APPROVAL OF BROKER'S FEES AND COSTS

DOUGLAS ELLMANN, Trustee (Trustee), states as follows:

1. He is the duly acting Trustee in the above captioned matter.

2. The Trustee for the debtor(s) (The "Estate"), has entered into a proposed sale with Cabrio Capital LLC, or assigns (Purchaser) , in the amount of $2.625 million, or to any higher purchaser at the scheduled auction sale to be held on July 25, 2011 at 10 a.m.. at undersigned's offices, to sell and assign to Purchaser, the Estate's rights in 332 E. William, Ann Arbor, MI. owned by Gallatin Manor, LLC, soleley owned by the debtor,. (Property),

3. The Estate and Purchaser have agreed, subject to Court approval, that Purchaser shall acquire the Estate's interest in the Property. Upon the completion of the sale, Purchaser shall pay the Estate the purchase price or higher if there is a higher bid at the auction.

4. The Trustee believes that the transaction with Purchaser is in the best interest of creditors and the estate. Purchaser is the highest offer that was received and it is an offer which based on the Trustee's current understanding is fair and reasonable under the circumstances.

5. Pursuant to the Bankruptcy Rules, the Court has discretion to authorize the Trustee to enter into the transaction with Purchaser. If no objection is filed and served upon the undersigned and the Trustee within 21 days, the authority to enter into the transaction may be granted without a hearing. If an

objection is filed and served upon the undersigned and Trustee, a notice of hearing to consider the motion will be sent to the objecting party. The proposed transaction with Purchaser is subject to bankruptcy court approval.

      6. For further information, please contact the undersigned.

      7. The sale terms and conditions will be subject to the approval of the Court.

      8. The Court has jurisdiction over the subject mater of this Application pursuant to federal law, including 28 USC Section 1334 (b) and 157 (a). All matters covered by the Application are core proceedings pursuant to federal law including 28 USC Section 157 (b) (2) (A), (N) and (O).

      9. The statutory basis for the relief requested is found in part in 11 USC 363 (b) and (f) and 725, as implemented by Bankruptcy Rules 2002, 6004, 9008 and the local court rules.

      10. The Trustee believes the proposed sale is in the best interests of creditors and the estate.

      11. Pursuant to 11 USC 363 and LBR 6004-1, the Trustee requests that this Court grant authority to sell the above described property, and make the findings of fact and conclusions of law as detailed in the proposed order filed contemporaneously with this application.

      12. The sale is "as is" and without representations or warranties of any kind by the Trustee and the Estate.

      13. The sale is to be free and clear of liens, with liens if any to transfer to the proceeds of sale pursuant to 11 USC §363.

      14. The Trustee also requests that he be allowed to execute any and all documents necessary to effectuate this transaction.

      15. Unless an objection is filed, the Court may sign an Order authorizing the sale and approving this application without a hearing.

      16. The application also requests approval of brokerage commissions of 6% for Colliers, International

THEREFORE, the Trustee requests that the Court enter an Order granting authority to conduct the above described sale under the terms and conditions listed above, and approving this application.

Dated: 6/20/2011 `

<u>/s/ Douglas Ellmann</u>
Douglas S. Ellmann (P34617)
Attorney for Trustee
308 W. Huron
Ann Arbor, MI   48103
734 668 4800
dse@ellmannlaw.com

# REAL ESTATE PURCHASE AGREEMENT

## 332 E. WILLIAM STREET, ANN ARBOR, MICHIGAN

AGREEMENT made by and between Gallatin Manor, LLC (collectively, the "Seller") and Cabrio Capital, LLC a Michigan limited liability company subsequently to be assigned to Cabrio on William, LLC a to be formed Michigan limited liability company (the "Buyer") subject to US Bankruptcy Court in the matter of Jeffrey Gallatin, debtor.

WITNESSETH: That Seller agrees to sell and convey and Buyer agrees to purchase a parcel of land containing approximately 0.32 acres of land, subject to easements and restrictions of record and together with all improvements thereon and all appurtenances thereto, including but not limited to one residential building containing approximately 29,768 square feet, located at 332 E. William and situated in the City of Ann Arbor, Washtenaw County, Michigan, and more particularly described in Exhibit A attached hereto and made a part hereof (the "Property"), upon the following terms and conditions:

1. **PURCHASE PRICE**. The purchase price for the Property shall be Two Million Six Hundred and Twenty Five Thousand Dollars ($2,625,000.00). The purchase price shall be payable in full, in immediately available funds, at the Closing (as defined in Section 12 below).

2. **INCLUDED PROPERTY**. The Property shall include, without limitation: all machinery, equipment, laundry equipment, fixtures, furniture, appliances, and supplies owned by Seller and used or usable in connection with the Property, whether located on or off the Property; all transferable licenses and permits and manufacturers' warranties; all leases; all financial records relating to the Property for the period of Seller's ownership thereof including non-confidential collection records; all engineering, environmental and other reports and studies relating to the Property; all tenements, hereditaments, privileges and appurtenances belonging or in any way appertaining to the Property; all rights of Seller in and to all air and riparian rights, if any; all minerals, oil and gas lying beneath the surface of the land; any land lying in the bed of any public street, public road or public avenue adjoining the Property to the center line thereof, but only to the extent of Seller's interest, if any, therein; and all easements, whether or not recorded, strips and gores abutting, adjacent, contiguous, or adjoining the Property, but only to the extent of Seller's interest, if any, therein.

3. **EARNEST MONEY**. Buyer shall pay the amount of Fifty Thousand Dollars ($50,000.00) to the Title Company (as defined in Section 4 below) as earnest money. The earnest money will be placed within five (5) Business Days following the expiration of the Bankruptcy Contingency (as defined in Section 6.1 below). This earnest money shall be held by the Title Company in a federally insured interest-bearing account, with the interest being credited and paid to whoever receives the earnest money. The earnest money shall be credited to Buyer and applied against the purchase price payable by Buyer at the Closing or disbursed by the Title Company as otherwise provided in this Agreement. In the event of any dispute between Seller and Buyer as to a default or breach of this Agreement or in the event the parties cannot agree as to the disposition of any escrowed funds, Seller and Buyer agree that the Title Company may be released from any further obligation under this Agreement by tendering such funds into a court of competent jurisdiction in an action in the nature of an interpleader for resolution by said court of the ultimate disposition thereof.

4. **TITLE COMMITMENT**. Seller shall provide a title commitment (the "Title Commitment") issued by American Title Company at 3005 Boardwalk Street Ste. 202 Ann Arbor, MI 48108 (the "Title Company") providing for the issuance at the Closing of an ALTA owner's title insurance policy without the standard exceptions in the amount of the purchase price insuring Buyer's

- 1 -

interest in the Property (the "Title Policy"). Seller agrees to execute the customary seller's/owner's affidavit requested by the Title Company in connection with the issuance of the Title Policy "without standard exceptions."

5. FURNISHING OF DUE DILIGENCE ITEMS. As soon as reasonably possible after the Effective Date, but in any event not later than five (5) Business Days after the Effective Date, Seller shall furnish to Buyer the following items (collectively, the "Diligence Items"):

(a) Survey. A boundary survey of the Property prepared by a surveyor licensed in the State of Michigan (the "Survey"). The Survey shall be dated or updated to a date not more than ninety (90) days prior to the Effective Date, and the Survey shall show, but shall not be limited to: (i) the location and dimensions of the Property; (ii) the locations and dimensions of all improvements on the Property; (iii) the locations and dimensions of all easements that benefit or burden the Property; and (iv) the metes and bounds legal description of the Property, which shall conform to the legal description set forth in Exhibit A hereto. The Survey also shall contain such other information and certifications and seals of the surveyor as are required to remove the survey exception from the Title Policy.

(b) Environmental Information. Copies of any and all environmental assessments or reports, and any other environmental information obtained by Seller with respect to the Property. If requested by Buyer, Seller will cooperate with and assist Buyer in having any such environmental assessments or reports certified by the preparer thereof to Buyer and Buyer's lender.

(c) Inspection Reports. Copies of any and all inspection reports obtained by Seller with respect to the Property and the improvements thereon.

(d) Other Information. (i) a list of all machinery, equipment, fixtures, furniture, appliances, and supplies owned by Seller and used or usable in connection with the Property; (ii) a list of and copies of all licenses and permits and transferable manufacturers' warranties; (iii) copies of all financial records relating to the Property for the period of Seller's ownership and/or occupancy thereof; (iv) copies of any certificates of occupancy issued by any governmental authority with respect to the Property; (v) copies of all engineering and other reports and studies relating to the Property; and (vi) a list of all contractors who have performed major repairs or replacements at the Property during Seller's ownership and/or occupancy thereof.

(e) Leases and Rent Roll. Copies of all leases and/or other agreements pertaining to possession and/or occupancy of the Property (the "Leases") and a certified list (the "Rent Roll") showing for each leasable space or area in the Property: (i) the space occupied and the size thereof; (ii) the name of the tenant or, if the space is vacant, a notation indicating the vacancy; (iii) the commencement and termination dates of the applicable Lease and any extension or renewal rights or early termination rights held by the tenant; (iv) the monthly minimum rental; (v) any rental escalations; (vi) any charges to be paid by the tenant for taxes and insurance and common area maintenance charges, and the manner and time of payment thereof; (vii) the amount of any security deposits; (viii) the amount and extent of any delinquencies; (ix) the amount of any prepaid rent; (xii) any provisions concerning concessions, extensions, setoffs, expansion rights, termination rights, allowances, options or any other extraordinary provisions; and (x) the right of any broker to any outstanding brokerage or other commission incident thereto.

(f) Service Contracts. Copies of any and all contracts and agreements (excluding the Leases) that are in effect as of the Effective Date and that relate to the operation, management,



-2-

leasing, maintenance or repair of all or any portion of the Property (the "Service Contracts"). On or before the date that Buyer removes or waives the Buyer's Contingencies (as provided in Section 6 below), Buyer shall notify Seller in writing as to which, if any, of the Service Contracts Buyer desires to assume, and which, if any, of the Service Contracts Buyer desires that Seller terminate. With respect to any Service Contracts that Buyer desires be terminated, Seller shall so terminate same at or prior to Closing, and Seller shall pay any and all amounts that are or may become due thereunder including, without limitation, any termination or cancellation fees. With respect to any Service Contracts that Buyer desires to assume, Seller shall assign same to Buyer at the Closing, and any amounts prepaid or owing thereunder shall be prorated between Buyer and Seller as of 12:01 a.m. on the Closing date.

    (g)    Appraisal. Copies of any appraisal that has been completed for the property in the last two years.

6.    BUYER'S CONTINGENCIES. This Agreement is subject to and contingent upon Buyer being satisfied, in its sole discretion, with:

    (a)    Condition of Title. The condition of title to the Property and all other information disclosed in the Title Commitment.

    (b)    Diligence Items. Buyer's review and approval of all information disclosed in the Diligence Items described in Section 5 above.

    (c)    Inspections of the Property. The results of such further assessments, inspections and investigations as Buyer deems necessary or appropriate, including but not limited to environmental assessments and testing, to determine the suitability of the Property for Buyer's proposed development and use. Such further assessments, inspections and investigations shall be performed by Buyer or parties selected by Buyer and at Buyer's expense.

    (d)    Financing. Buyer obtaining sufficient financing, including but not limited to the assumption of any current mortgage encumbering the property, with acceptable terms to close on the property according to the terms of this Agreement.

6.1    BANKRUPTCY CONTINGENCY. This Agreement is subject to higher and better offers _____ by US Bankruptcy Court in the matter of Jeffrey Gallatin, debtor.

The contingencies set forth in section 6 above (the "Buyer's Contingencies") shall be removed or waived by Buyer in writing within sixty (60) days after the date that the Bankruptcy Contingency in section 6.1 has been removed by the US Bankruptcy Court (the "Contingency Period"). If any Buyer's Contingency is not removed or waived by Buyer in writing prior to the expiration of the Contingency Period, as it may have been extended, then, during the period after the expiration of the Contingency Period until such Buyer's Contingency is removed or waived by Buyer in writing, either Buyer or Seller may terminate this Agreement by giving written notice thereof to the other party, in which event all earnest money shall be returned immediately to Buyer and all rights and obligations of Seller and Buyer under this Agreement shall terminate.

7.    ACCESS TO PROPERTY AND COOPERATION. Seller shall permit Buyer and Buyer's designees such access to the Property as is reasonably necessary or appropriate to perform the assessments, inspections and investigations described in Subsection 6(c) above.

Buyer shall have the right to apply for and obtain any rezoning, land use, site plan and signage approvals, and other governmental approvals and permits, which Buyer deems necessary or appropriate with respect to its proposed development and use of the Property, and Seller agrees: (a) to sign any instruments required for such application or approvals; (b) to furnish any required evidence of ownership; (c) to appear at hearings, if requested; and (d) to fully cooperate with and assist Buyer in applying for and obtaining such approvals; PROVIDED, HOWEVER, that Seller shall not be required to bear any expense therefore.



8. **REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER.** None. The property is to be purchased by Buyer in an "as-is" "where-is" condition, *without representations or warranties of any kind.*

9. **OPERATIONS UNTIL CLOSING.** From the Effective Date until the Closing Date:

    (a) Seller shall continue its usual program of maintenance, repairs and replacements, at its expense, so that possession of the Property shall be delivered at Closing in substantially the same condition as at the Effective Date. To the extent that any maintenance, repairs or replacements are undertaken on the Property, Seller shall pay for the same in full on or before the Closing date.

    (b) Seller shall keep and perform all of its obligations under the Leases. Seller shall not, without obtaining Buyer's prior written consent (which consent shall not be unreasonably withheld or delayed): waive any monetary or other default under any Lease; terminate any Lease, enter into any new lease or amend, extend, renew, supplement or modify any existing Lease. Seller shall not apply all or any portion of any security deposit to rent in arrears or any other claims or damages. Buyer shall have the right to advertise, show and lease the Property to secure property revenue provided that the rental rates for any new leases are at least equal to or above current rental rates. Buyer shall have the right to place a sign on the Property with contact information for the Buyer in order to facilitate marketing and leasing. If a closing on the Property does not occur between Buyer and Seller, Seller shall pay Buyer a 5% commission on the total value of the Leases executed by Buyer. Buyer shall have the right to perform cleanup and minor property maintenance, at its discretion and expense, in order to present the Property to prospective Tenants in the best possible manner.

    (c) Seller shall keep and perform all of its obligations under the Service Contracts, and Seller shall not amend or modify any Service Contract that Buyer elects to assume.

    (d) Seller shall maintain in full force and effect all policies of casualty and liability insurance, with the same limits of coverage that it now carries, with respect to the Property and the ownership, maintenance and operation thereof.

    (e) Seller shall not cause nor permit any action to be taken that could adversely affect the Property or the use thereof by Buyer.

10. **REPRESENTATIONS, WARRANTIES AND COVENANTS OF BUYER.** Buyer represents, warrants and covenants to Seller that:

    (a) **Authority.** Buyer has the power and authority to purchase the Property in accordance with the terms and conditions of this Agreement, and all required actions and approvals therefore have been, or will be on or before the Closing date, duly taken and obtained.

6/15/11
JC

-4-

Purchase Agreement – 322 E. William – Cabrio on William, LLC – June 2011.doc

(b) **No Breach.** The execution and delivery of this Agreement, the consummation of the transactions provided for herein and the fulfillment of the terms hereof will not result in a breach of any of the terms or provisions of, or constitute a default under, any agreement of Buyer or any instrument to which Buyer is a party or by which Buyer is bound, or any judgment, decree or order of any court or governmental body, or any applicable law, rule or regulation.

11. **CASUALTY LOSS OR CONDEMNATION.** Seller shall retain all risk of loss to the Property by fire or other casualty until delivery of the deed at the Closing.

If at any time prior to Closing: (a) all or any portion of the Property is destroyed or damaged as a result of fire or any other casualty whatsoever; or (b) any proceeding relating to the proposed taking of all or any portion of the Property by condemnation or eminent domain is instituted or threatened by any public authority; then, in either such event, Seller shall immediately notify Buyer thereof and Buyer shall have the option, to be exercised in Buyer's sole discretion by written notice to Seller within ten (10) Business Days thereafter, to terminate this Agreement, in which event the earnest money shall be returned immediately to Buyer and all rights and obligations of Seller and Buyer under this Agreement shall terminate.

If there is any fire or casualty or condemnation or taking, as set forth above, and if Buyer elects not to terminate this Agreement as herein provided, then all insurance and/or condemnation proceeds paid or payable to Seller resulting therefrom shall be assigned and paid over to Buyer at Closing, and Seller shall further execute all assignments and any other documents or other instruments as Buyer may reasonably request or as may be necessary to transfer all interest in all such proceeds to Buyer or to whomever Buyer shall direct; and Seller shall pay to Buyer at Closing an amount equal to the amount of any applicable insurance policy deductible.

12. **CLOSING AND POSSESSION.** At the time that all of the Buyer's Contingencies are removed or waived by Buyer, a date for the consummation of the sale and purchase of the Property contemplated herein (the "Closing") shall be selected by Buyer, and Buyer shall give Seller written notice of the Closing date so selected; PROVIDED, HOWEVER, said Closing date shall not be more than fifteen (15) days after the date that the last Buyer's Contingency is removed or waived by Buyer. The Closing shall take place at the offices of the Title Company or at any other place that is mutually acceptable to Buyer and Seller. Possession of the Property shall be given to Buyer at the Closing subject to the rights of tenants in possession under the Leases.

13. **FORM OF CONVEYANCE.** At the closing, Seller shall ~~grant and convey~~ sign a transfer deed to Buyer ~~good~~ and marketable title to the Property free and clear of all leases, liens, encumbrances, easements, reservations and restrictions other than the Leases and such easements and restrictions as are listed in the Title Commitment. At the Closing, Seller shall pay the premium for the issuance of the Title Policy in accordance with the provisions of the Title Commitment. Seller also shall pay any transfer fees, document stamps and/or other similar fees or taxes imposed on the transfer of real estate.

14. **SPECIAL ASSESSMENTS AND BENEFIT CHARGES.** All special assessments that have been assessed against the Property as of the Closing date, including unpaid installments thereof whether or not currently due shall be paid by Seller. All special assessments that are duly assessed against the Property after the Closing date shall be paid by Buyer. Any benefit charges against the Property or Seller made by any governmental authority for installation of, or tap-in fees for, water service, sanitary sewer, or storm sewer service, for which charges have been made, incurred or billed as of the Closing date shall be paid by Seller. Any such charges which are incurred after the Closing date shall be paid by Buyer.

15. **PRORATION OF TAXES.** All property taxes (real and personal) with respect to the Property that are due as of the Closing date shall be paid by Seller. All property taxes with respect to the Property that become due after the Closing date shall be paid by Buyer. Current property taxes shall be prorated between Seller and Buyer as of 12:01 a.m. on the Closing date in accordance with the customary method of prorating property taxes on commercial properties in the locale of the Property.

16. **PRORATION OF RENTS.** All rents shall be prorated between Seller and Buyer as of 12:01 a.m. on the Closing date based upon the actual number of days in the applicable period. At the Closing, Buyer shall receive a credit from Seller for the amount attributable to the period from and including the Closing date forward. The proration shall be based on the assumption that all rents for all spaces or areas that are leased and/or occupied have been paid in advance and have been collected by Seller.

17. **TRANSFER OF SECURITY DEPOSITS.** At the Closing, Seller shall turn over to Buyer all security deposits being held in connection with the Property together with all records pertaining thereto, and Buyer shall thereafter assume the obligations to the tenants with respect to said security deposits.

18. **UTILITY CHARGES.** With respect to all utilities for which Seller is responsible under the Leases or otherwise, final readings shall be obtained from each utility provider as of the Closing date and Seller shall be responsible for paying said utilities. Buyer shall arrange for all such utilities to be billed to Buyer from and after the Closing date.

19. ~~**TENANT ESTOPPELS.** Seller shall obtain and deliver to Buyer prior to Closing a written estoppel certificate from each tenant at the Property in form and substance reasonably satisfactory to Buyer and Buyer's lender stating that there are no material deviations from the information contained in such Tenant's Lease and that there are no defaults by the tenant or defaults by or claims against the landlord under such Lease.~~

20. **INDEMNIFICATIONS.** Buyer agrees to defend, indemnify and hold Seller harmless from and against any and all claims, losses, damages, costs and expenses, including reasonable attorneys' fees, in any way relating to the Property and arising out of Buyer's acts or omissions after the Closing date. ~~Seller agrees to defend, indemnify and hold Buyer harmless from and against any and all claims, losses, damages, costs and expenses, including reasonable attorneys' fees, in any way relating to the Property and arising out of Seller's acts or omissions on or before the Closing date.~~

21. **SELLER'S OBLIGATIONS AT THE CLOSING.** At the Closing, Seller shall:

    (a) ~~Warranty~~ *Trustee's* Deed. Execute and deliver a ~~Warranty~~ *Trustee's* Deed by which Seller conveys to Buyer ~~good and marketable~~ title to the Property, ~~free and clear of all leases, liens, encumbrances, easements, reservations and restrictions other than the Leases and such easements and restrictions as are listed in the Title Commitment.~~

    (b) Bill of Sale. Execute and deliver a Bill of Sale by which Seller conveys to Buyer good and marketable title to all tangible and intangible personal property included with the Property;

    (c) Assignment of Leases. Execute and deliver an Assignment and Assumption of Leases by which Seller assigns to Buyer all of Seller's right, title and interest in and to the Leases and the security deposits deposited by tenants thereunder. Seller also shall deliver to Buyer

- 6 -

Purchase Agreement – 332 E. William – Cabrera on William, LLC – June 2011.doc

originals of all Leases, security deposit agreements, and any other agreements entered into with tenants at the Property.

(d) **Notices to Tenants.** Execute and deliver Notices to Tenants that advise tenants of the sale of the Property, and that direct tenants to send rent and other payments thereafter to Buyer (or its agent) at an address designated by Buyer, and that advise tenants of the transfer of the security deposits. Seller shall be responsible for sending said Notices to tenants.

(e) **Assignment of Licenses, Permits, and Warranties.** Execute and deliver an Assignment of Licenses, Permits and Warranties by which Seller assigns to Buyer all of Seller's right, title and interest in and to all licenses, permits and warranties that are included in the Property. Seller also shall deliver to Buyer the original of each license, permit and warranty being transferred.

(f) **Certificates of Occupancy.** Deliver to Buyer the certificate or certificates of occupancy, or a master certificate of occupancy or other letter of confirmation, issued by the appropriate governmental authority authorizing the use of the Property as it is presently being used.

(g) **Assignment of Service Contracts.** Execute and deliver an Assignment of Service Contracts by which Seller assigns to Buyer all of Seller's right, title and interest in and to those Service Contracts that Buyer has elected to assume. Seller also shall execute and deliver to Buyer notices to the service providers under the Service Contracts being assigned that advise such providers of the sale of the Property to Buyer and the assignment of said Service Contracts.

(h) **Non-foreign Certification.** Furnish to Buyer a written certification (the "Non-foreign Certification") in compliance with the Tax Reform Act of 1984 (the "Act") and the regulations thereunder that are imposed by the Foreign Investment in Real Property Tax Act ("FIRPTA"), certifying that Seller is not a person or entity subject to withholding under FIRPTA and the Act. If Seller does not furnish such a Non-foreign Certification, Buyer may withhold at the Closing a sufficient portion of the gross proceeds of the sale of the Property for remittance to the Internal Revenue Service in accordance with the provisions of the Act.

(i) **Title Premium.** Pay the premium for the issuance of the Title Policy in accordance with the provisions of the Title Commitment.

(j) **Transfer Taxes.** Pay any and all transfer fees, document stamps and/or other similar fees or taxes imposed on the transfer of real estate.

(k) **Prepaid Rents and Other Adjustments.** Pay to Buyer, or give Buyer credit against the purchase price therefor, any prepaid rents and any other amounts that may be owing by Seller to Buyer under the provisions of this Agreement.

(l) **Transfer of Security Deposits.** Transfer and pay to Buyer all security deposits. Seller also shall deliver to Buyer all records pertaining to said security deposits.

(m) **Closing Fees.** Pay all closing fees related to closing the transaction. This shall include all expenses charged by the Title Company for its services in connection with the Closing, ~~all costs related to financing the property including bank origination fees, mortgage title insurance, appraisal and environmental assessments, survey, flood determination, administrative fees, and State UCC fees.~~ *[handwritten:]* (e) transfer tax, closing fees, tax proration and brokers commission. *[initialed DGS]*

*[handwritten initials: JC  6/13/11]*

- 7 -

Purchase Agreement - 332 E. William - Cabrio on William, LLC - June 2011.doc            Cabrio Capital

11-42651-tjt    Doc 28    Filed 06/20/11    Entered 06/20/11 15:44:21    Page 10 of 20

(e) Indemnity Agreement. Execute and deliver an Indemnity Agreement by which Seller agrees to defend and indemnify Buyer as provided in Section 20 above.

Copies of each of the documents set forth above shall be furnished to Buyer not less than five (5) Business Days prior to the Closing date, and the form and substance of each document shall be subject to the approval of Buyer, which approval shall not be unreasonably withheld or delayed.

22. BUYER'S OBLIGATIONS AT THE CLOSING. At the Closing, Buyer shall:

(a) Purchase Price. Pay to Seller, in immediately available funds, the balance of the purchase price after receiving credit for the earnest money.

(b) Other Payments. Pay to Seller any other amounts that may be owing by Buyer to Seller under the provisions of this Agreement.

(c) Assumption of Leases. Execute and deliver an Assignment and Assumption of Leases by which Buyer assumes and agrees to perform the landlord's obligations under the Leases.

(d) Indemnity Agreement. Execute and deliver an Indemnity Agreement by which Buyer agrees to defend and indemnify Seller as provided in Section 20 above.

23. BROKERS. If any broker or finder asserts a claim for a fee or commission with respect to this Agreement or the transaction contemplated hereby which claim arises out of such broker's or finder's dealings with either party hereto, such party agrees to indemnify the other party against any liability or expense, including reasonable attorneys' fees, resulting from such claim.

24. RIGHT TO ASSIGN – ENTITY TO BE FORMED. Upon the formation of Cabrio on William, LLC a Michigan limited liability company this Agreement shall be assigned from Cabrio Capital, LLC to Cabrio on William, LLC and written notice shall be provided to Seller of the assignment. In addition Buyer shall have the right to assign all or any part of its rights and obligations under this Agreement to any person, partnership (general or limited), corporation or other entity, provided that written notice thereof is provided to Seller prior to the Closing date. Seller agrees to perform its obligations hereunder for the benefit of, and to close the transaction contemplated hereby with, any such assignee or assignees.

25. DEFAULT. If Buyer defaults in the performance of its obligations under this Agreement, Seller's sole and exclusive remedy shall be to retain the earnest money as liquidated damages, which the parties hereto agree is a reasonable and proper amount in light of the circumstances, and all other rights and obligations of Seller and Buyer under this Agreement shall terminate. If Seller defaults in the performance of its obligations under this Agreement, Buyer ~~may exercise and pursue any right or remedy against Seller which may be available at law or in equity, including, without limitation, specific performance, or immediate~~ will retain refund of the earnest money deposit ~~broker in equal amount of the transaction money deposit from the Seller, all of which rights and remedies shall be cumulative~~.

26. FUTURE COOPERATION. Seller agrees, at any time or from time to time after Closing, to execute, acknowledge and/or deliver such further instruments and other documents (and to bear its own costs and expenses incidental thereto) and to take such other actions as Buyer may reasonably request in order to carry out the intent and purpose of this Agreement; PROVIDED, HOWEVER, that Seller shall not be obligated to incur any expense of a material nature or to incur any material obligations in addition to those set forth in this Agreement.

- 8 -

27. MISCELLANEOUS

(a) Applicable Law. This Agreement shall be governed by, and construed and interpreted in accordance with, the laws of the State of Michigan.

(b) Entire Agreement. This writing shall constitute the entire agreement, and shall supersede any other agreements, written or oral, that my have been made or entered into, by and between the parties hereto with respect to the subject matter hereof and shall not be modified or amended except in a subsequent writing signed by the party against whom enforcement thereof is sought.

(c) Binding Effect. This Agreement shall be binding upon, and inure to the benefit of and be enforceable by, the parties hereto and their respective permitted heirs, representatives, successors and assigns.

(d) Counterparts. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original as against any party whose signature appears thereon, and all of which together shall constitute one and the same instrument. This Agreement shall become binding upon the parties hereto when one or more counterparts hereof, individually or taken together, shall bear the signatures of all parties hereto.

(e) Non-Waiver. No waiver by any party hereto of any provision of this Agreement shall constitute a waiver by such party of such provision on any other occasion or a waiver by such party of any other provision hereof.

(f) Severability. Should any one or more of the provisions of this Agreement be determined to be invalid, unlawful or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions hereof shall not in any way be impaired or affected thereby.

(g) Survival of Representations, Warranties and Covenants. All representations, warranties and covenants made in this Agreement shall survive the Closing.

(h) No Construction Against Drafting Party. Each of the parties hereto has participated fully and equally in the negotiation and preparation of this Agreement. Accordingly, this Agreement shall not be more strictly construed against, nor shall any ambiguities within this Agreement be resolved against, either party hereto, solely because such party may have prepared this Agreement.

(i) Time of the Essence. Time is of the essence under this Agreement.

(j) Notices. All written notices required or permitted hereunder shall be deemed effective and duly given: (i) when personally delivered; (ii) when sent by telephone facsimile (the sender also shall send hard copy following the facsimile, however, the notice shall be effective upon the transmission of the facsimile); (iii) one day after depositing in the custody of a nationally recognized receipted overnight delivery service with delivery fees prepaid; or (iv) two days after posting in the U.S. first class or registered or certified mail with postage prepaid. Notices shall be sent to the parties as follows:



If to Seller:  DOUGLAS SMITH ~~SMITH~~ BANKRUPTCY of JEFFREY GALLATIN
305 W. HURON
Ann Arbor, MI 48103
Attn: _____
Fax No: 734 662-3893

With a copy to:

_____
_____
_____

Fax No: _____

If to Buyer:  Cabrio Capital, LLC
524 South Main
Suite 100
Ann Arbor, MI 48104
Attn: Jason Costello
• jcostello@cabriogroup.com
• Phone: 734-994-7374
• Fax: 734-994-7380

Either party may change its notice address by giving notice of such change in the manner prescribed above.

(k) **Enforcement.** If either party defaults in the performance of its obligations under this Agreement, or if a dispute arises with respect to the meaning or interpretation of any provision of this agreement, the defaulting party or the party not prevailing in such dispute, as the case may be, shall pay any and all costs and expenses, including reasonable attorneys fees, incurred by the other party in enforcing or establishing its rights under this Agreement. The U.S. Bankruptcy Court in the matter of Jeffrey Gallatin retains jurisdiction over this matter. Case # 11-42651 (E.D. Mich. Bankruptcy Court)

(l) **Captions and Headings.** The captions and headings appearing in this Agreement are inserted only as a matter of convenience and do not define, limit, construe or describe the scope or intent of the provisions of this Agreement nor in any way affect this Agreement.

(m) **Facsimile Transmission.** Any signed copy of this Agreement or notice hereunder that is transmitted by telephone facsimile (fax) or electronically scanned and sent via e-mail shall be competent evidence of its contents to the same effect as an original signed copy. Each of the parties hereto agrees to provide an original signed document to the other upon request.

(n) **Offer Period.** It is therefore understood that this offer is irrevocable for five (5) days from the date of Sellers receipt of this offer. If the offer is accepted by the Seller, the Buyer agrees to complete the purchase of said property within the time indicated in paragraph 11. If the Seller has not been accepted this offer within the five (5) day offer period the offer will be null and void.

28. **EXECUTION, EFFECTIVE DATE AND BUSINESS DAYS.** Each party hereto has signed this writing on the date set forth next to its signature below, and each party has initialed any change hereto that is acceptable to it on the date set forth next to its initials with respect to such change. This Agreement shall become effective and binding upon the parties when: (a) it has been signed by all parties; and (b) any and all changes hereto have been initialed by all parties; and the latest of the dates set

- 10 -

Purchase Agreement - 112 E. Williams - Cabrio on Williams, LLC - June 2011.doc    Cabrio Capital

forth next to such signatures or initials shall be the "Effective Date." For purposes of this Agreement: (i) a "Business Day" shall be any day that is not a Saturday, Sunday or United States holiday; and (ii) whenever the last day for the exercise of any right or the discharge of any duty hereunder shall fall upon a Saturday, Sunday or United States holiday, the party having such right or duty shall have until 11:59 p.m., local time at the site of the Property, on the next Business Day to exercise such right or to discharge such duty.

IN WITNESS WHEREOF, Seller and Buyer have executed this Agreement intending it to be effective and binding as of the Effective Date.

SELLER: Gallatin Manor, LLC a Michigan Limited Liability Company

By: _[signature]_ as Berkoff, Trustee of Jeffrey Gallatin, Sole
Name: Member of Gallatin Manor, Ltd
Dated: 6/13/11

BUYER: Cabrio Capital, LLC a Michigan Limited Liability Company

By: _[signature]_
Name: Jason Costello
Title: Managing Member
Dated: 6/19/2011

6/13/11
JC

- 11 -

Purchase Agreement - 332 E. William - Cabrio on William, LLC - June 2011.doc    Cabrio Capital

11-42651-tjt    Doc 28    Filed 06/20/11    Entered 06/20/11 15:44:21    Page 14 of 20

REAL ESTATE PURCHASE AGREEMENT
322 E. William, Ann Arbor, Michigan

Exhibit A

DESCRIPTION OF THE PROPERTY:

E 33 FT OF W 99 FT OF N 1/2 OF LOT 7 AND E 86 FT OF W 152 FT OF LOT 8 BHS, R6E ORIGINAL PLAT OF ANN ARBOR

Parcel #: 09-09-29-426-015

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

Gallatin, Jeffrey

Hon. Thomas J. Tucker

11-42651-T

Debtor(s)

Chapter 7

_____/

NOTICE OF TRUSTEE'S APPLICATION FOR AUTHORITY TO (I) SELL CERTAIN PROPERTY FREE AND CLEAR OF LIENS, CLAIMS,ENCUMBRANCES AND OTHER INTERESTS AT AUCTION SALE AND TRANSFER LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS TO PROCEEDS OF SALE AND FOR APPROVAL OF BROKERAGE FEES AND COSTS

TO: ALL CREDITORS AND PARTIES IN INTEREST

The Trustee is giving notice that he intends to sell to Cabrio Capital LLC (Purchaser), or assigns, for the amount of $2.625 million, or to any higher and better offeror at the scheduled auction sale held on July 25, 2011 at 10 a.m. at undersigned's offices, the Estate's rights to 332 E. William, Ann Arbor, MI. owned by Gallatin Manor, LLC, soleley owned by the debtor,. The application also requests approval of brokerage commissions of 6% for Colliers, International. The application requests that the sale be "as is", without representations or warranties, free and clear of liens with liens to attach to the proceeds of sale. The sale is made pursuant to 11 USC 363 and LBR 6004-1 (EDM).

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the court to approve or if you want the court to consider your views on the motion. Within <u>21</u> days, you or your attorney must:
1. File with the court a written response or an answer, explaining your position at:
   United States Bankruptcy Court
   211 W. Fort Street, Suite 2100
   Detroit, MI 48226

If you mail your response to the court for filing, you must mail it early enough so the court will receive it on or before the date stated above.
   You must also mail a copy to:
   Douglas S. Ellmann
   308 W. Huron
   Ann Arbor, MI   48103
2. If a response or answer is timely filed and served, the clerk will schedule a hearing on the motion and you will be served with a notice of the date, time and location of the hearing.

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.**

Dated: June 20, 2011                                                                                                          `

/s/ Douglas Ellmann
Douglas S. Ellmann (P34617)
Attorney for Trustee
308 W. Huron
Ann Arbor, MI   48103
734 668 4800
dse@ellmannlaw.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

Gallatin, Jeffrey

        Debtor(s)

_____/

11-42651-T

Hon. Thomas J. Tucker

Chapter 7

ORDER GRANTING TRUSTEE'S APPLICATION FOR AUTHORITY TO
SELL CERTAIN PROPERTY FREE AND CLEAR OF LIENS, CLAIMS,
ENCUMBRANCES AND OTHER INTERESTS AT AUCTION SALE; AND TRANSFER LIENS, CLAIMS,
ENCUMBRANCES AND OTHER INTERESTS TO PROCEEDS OF SALE
AND FOR APPROVAL OF BROKERAGE FEES AND COSTS
_____

This matter having come before the Court upon the Trustee's Application for Authority to Sell Property Free and Clear of Liens, Claims, Encumbrances and Other Interests at Auction Sale; and Transfer Liens, Claims, Encumbrances and Other Interests to Proceeds of Sale (the "Application"), and Opportunity to Respond to the Application having been given pursuant to LBR 6004-1 (EDM) to all creditors and other parties-in-interest,, the Court being otherwise duly advised in the premises and having made the following findings:

- FOUND, that this Court has jurisdiction to hear and determine the Application pursuant to 28 U.S.C. 1334(b) and that this matter is a core proceeding under 28 U.S.C. 157(b)(2)(A), (M) and (O);

- FOUND, that proper, timely, adequate and sufficient notice of the Application has been provided to creditors and parties-in-interest in accordance with all applicable Bankruptcy Rules and Local Rules of the Bankruptcy Court for the Eastern District of Michigan, including the Federal Rules of Bankruptcy Procedure 2002, 6004 and 6006 and L.B.R. 6004-1 (E.D.M.);

- FOUND, that a reasonable opportunity to object and to be heard regarding the requested relief has been afforded to all interested persons and entities;

FOUND, that no other or further notice of the Application, the hearing or the entry of this Order is necessary;

_ FOUND, that the Application was duly and properly served on all required persons and entities including all parties claiming any interest in the Property as that term is defined in the Application;

- FOUND, that the total consideration to be realized by the Trustee from the purchaser or their assigns, (purchaser) pursuant to the sale proposed in the Order is fair and reasonable and the transactions

contemplated therein are in the best interests of the Estate; and the Court being otherwise fully informed in the premises; now therefore,

IT IS HEREBY ORDERED that the above findings are incorporated by reference into this order and that the Application is approved and granted in all respects, and the Trustee is authorized to sell the Property, free and clear of any liens, claims, encumbrances and other interests pursuant to the terms set forth in the Application, as described in the Application or any Exhibit to be attached to this Order, if any, after it is approved, 332 E. William, Ann Arbor, MI.  owned by Gallatin Manor, LLC, soleley owned by the debtor, (Property) to Purchaser(s), Cabrio Capital LLC at auction sale .  A copy of any legal description, if appropriate for recording purposes, may be attached to this Order after entry.

IT IS FURTHER ORDERED that all liens, claims and encumbrances in the Property shall be transferred to the proceeds of the sale with the same validity and priority as to the proceeds as they had with respect to the Property, subject to the avoidance powers of the Trustee and further order of the Court;

IT IS FURTHER ORDERED that the Trustee shall perform any and all acts necessary to carry out the terms of the transaction contemplated in the Offer, the Application and this Order;

IT IS FURTHER ORDERED that the Trustee is authorized and is directed to prepare, execute and deliver any and all documents and instruments necessary to effectuate the transaction contemplated in the Offer, and to undertake any and all actions which are necessary in accordance with the Application and this Order;

IT IS FURTHER ORDERED that each and every federal, state and local governmental agency or department is hereby directed to accept and process any and all documents and instruments necessary and appropriate to consummate the transaction contemplated in the Offer, the Application and this Order;

IT IS FURTHER ORDERED that the provisions of this Order shall be self executing and neither the Trustee nor any purchaser of the Property shall be required to execute or file discharges, termination statements, assignments, consents or other instruments in order to effectuate, consummate or implement the foregoing provisions hereof; provided, however, that this paragraph shall not excuse either party from performing any and all of their respective obligations under the transaction contemplated in the Offer, the Application or this Order, or from executing and delivering such documents as are reasonably requested by the other to effectuate the transaction contemplated in the Offer, the Application or this Order;

IT IS FURTHER ORDERED that this Court shall retain jurisdiction to resolve all contractual disputes between the purchaser and the Trustee arising out of the transaction contemplated in the Offer and the Application, and to enforce the terms of this Order.

IT IS FURTHER ORDERED that the property is sold "where is", "as is" and without representations or warranties of any kind, except those provided to purchaser from the debtor.

IT IS FURTHER ORDERED that the trustee's broker's fees of Colliers, Intl. are approved and it will be paid its commission at closing of 6% of the sale price.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:  Hon. Thomas J. Tucker
Gallatin, Jeffrey
 11-42651-T
 Debtor(s) Chapter 7
_____/

CERTIFICATE OF SERVICE

Douglas S. Ellmann, certifies that he caused to be sent through electronic case filing or first class mail or via electronic case filing on this date, a copy of the Trustee's Application to Sell Assets Free and Clear of Liens, et. seq. proposed order, 21 day notice to the US Trustee 211 W. Fort St., Detroit, MI 48226, and upon the debtor by his attorney via electronic case filing and upon counsel of record via ecf, and any of the below listed creditor(s) by first class mail, and notice was sent to all parties on the matrix.

PNC Mortgage
POB 1820
Dayton, OH 45401
via ecf or first class mail

Dated: June 20, 2011

/s/ Douglas Ellmann
Douglas S. Ellmann (P34617)
Attorney for Trustee
308 W. Huron
Ann Arbor, MI 48103
734 668 4800
dse@ellmannlaw.com